AT INDIANAPOLIS, MAY TERM, 1837, IN THE TWENTY-
FIRST YEAR OF THE STATE.

---

### MEMORANDA.

*JOHN T. M'KINNEY,* Esquire, one of the Judges of this
Court, died in the last vacation at his residence in *Brookville.*
He was succeeded by *Jeremiah Sullivan,* Esquire, who took
his seat on the third day of the present term.

---

### WELBORN and Others *v.* JOLLY.

A transcript of the judgment of a justice of the peace, with a certificate that
an execution on the judgment had been returned "no property found,"—was
filed in the clerk's office of the Circuit Court, for the purpose of obtaining an
execution from that Court. After the transcript was filed, and before the
execution issued, the judgment-debtor died. *Held,* that in such case, the
*scire facias* to have execution from the Circuit Court, should be not only
against the heirs of the deceased, but also against his executors or adminis-
trators and the terre-tenants if any.

APPEAL from the *Posey* Circuit Court. $\quad$ *Monday,*
*May,* 29.

DEWEY, J.—This is a proceeding for the purpose of obtain-
ing execution from the Circuit Court, on a judgment of a jus-
tice of the peace. It is instituted under the 48th section of

May Term, 1837.

Welborn
v.
Jolly.

the "Act regulating the jurisdiction and duties of justices of the peace." Rev. C. 1831, p. 309.

A transcript of a judgment in favour of the appellee against *Jesse Y. Welborn*, rendered by a justice, was filed in the clerk's office, together with a certificate that execution upon the same had been issued to the proper officer, and by him returned "no property found." A *scire facias* issued from the Circuit Court against *Jesse Y. Welborn*, and was served upon him; but before any further steps were taken, his death was suggested upon the record, and the suit abated. On motion of the appellee, an order for a *scire facias* was obtained against the heirs of the deceased, (naming them,) who are the appellants. The writ accordingly issued against them by name, describing them as heirs. Neither executor, administrator, nor terre-tenant, is mentioned in it. The appellants appeared to the *scire facias*. A part of them moved the Court to quash the writ. One pleaded *riens per descent*, to which there was a general demurrer. Another being under the age of 21 years, by his guardian *ad litem*, prayed that the *parol might demur* until his full age. The Court overruled the motion to quash, sustained the demurrer to the plea, rejected the prayer of the infant, and rendered final judgment of execution against all the appellants.

The view we shall take of this cause precludes the necessity of deciding, whether or not the common law practice of staying proceedings against an infant until his full age, has been adopted into our system of jurisprudence (1).

The question arising under the motion to quash the writ, and that presented by the demurrer, are the same; for, allowing the plea of *riens per descent* to be well pleaded, (as to which we give no opinion,) the demurrer as well as the motion involves the sufficiency of the *scire facias*, which performs the office of a declaration. The objection to it is, that it does not include the executor or administrator of *Jesse Y. Welborn*, nor show any cause for the omission.

By the common law, a *scire facias* must issue against the personal representative of a person dying after judgment, before his lands can be reached in the hands of his heirs or the terre-tenants. 2 Tidd's Prac. 1059.—6 Bac. Abr. 114, tit. *Sci. Fa.* The reason is, that assets are first chargeable with the payment of debts.

Although a literal construction of the clause of the statute under which this proceeding has been instituted, seems to give a creditor by judgment of a justice, the choice of proceeding either against the "executors, administrators, *or* heirs," and terre-tenants if any, we cannot suppose that the legislature designed to render the land liable on such a judgment immediately after the decease of a debtor. Such an interpretation would be incompatible with that provision of the probate law, which provides that no executor or administrator shall be sued in less than one year after obtaining letters testamentary or of administration. Indeed, it would be equally hostile to various other provisions of that law. Nor can we believe that it was the design of the legislature, to make a distinction between the judgments of the Circuit Courts and those of justices advantageous to the latter. Yet such would be the result, should we construe the clause of the statute in question to mean, that the real estate of a deceased person might be reached by proceedings prescribed by it, immediately after his death. There is no mode pointed out by our statutes, by which a judgment of the Circuit Court against a decedent can be enforced against real estate, until after the assets in the hands of the executor or administrator, have been found to be insufficient for the payment of debts. And even after judgment is obtained against the executor or administrator, and an execution returned unsatisfied, further proceedings against them, conjointly with the heirs and devisees, are requisite before land can be reached. Rev. Code, 1831, p. 243, 244.

The execution contemplated by the act which we are considering runs against "the goods and chattels, lands and tenements" of the deceased. Why should it run against "goods and chattels," unless the executor or administrator, who has the management of them, is to be made a party to the proceedings of which it is the result?

On the whole we think the *spirit* of this act, as well as the general policy of our legislation, which considers the personalty of either living or deceased persons as the first fund for the satisfaction of debts, requires the executor or administrator *and* the heir, and terre-tenant if any, to be made parties to the *scire facias*. That not having been done in this case, the Circuit Court erred in not quashing the writ.

36

*Per Curiam.*—The judgment is reversed, and the proceedings subsequent to the abatement of the suit by the death of *Jesse Y. Welborn* set aside, with costs. Cause remanded for further proceedings, &c.

*W. T. T. Jones* and *J. R. E. Goodlet,* for the appellants.

*J. Pitcher,* for the appellee.

(1) It was the *English* law until very recently, that, in many real actions brought by or against an infant, and also in suits against him as an heir on the bond of his ancestor,—the *parol should demur,* that is, that the *pleadings* should be *stayed* till the infant came of age. 3 Bl. Comm. 300. The privilege of making the *parol demur* for non-age is of feudal origin; and the reasons for it may be seen in Gilb. Hist. C. P. 54, 56.—3 Bac. Abr. 621.

In analogy with this rule of the common law, Courts of chancery, in decrees against infants, (except in foreclosure suits,) reserved the right to the infant, for six months after he attained his majority, to make a new case by answer and evidence. *Kelsall* v. *Kelsall,* 2 Mylne & Keene, 409. In foreclosure suits, the six months were given, not to unravel the accounts or to redeem, but only to show error on the face of the decree; and when a sale was ordered in such case, no day was given. *Ibid,*—*Mills* v. *Dennis,* 3 Johns. C. R. 367.

The right at law of *parol demurrer* is now, in *England,* taken away by the statute of 1 Will. 4. And it has been there decided since that statute, that as the practice in equity of reserving to infants, in decrees against them, six months, &c., was established in analogy to the common law rule,—that privilege must now, by the like analogy, be considered as abolished. *Powys* v. *Mansfield,* 6 Simons, 637.

In many of the *American* states, *parol demurrer* is expressly abolished by statute.